of Corrections, maybe not saying it quite right. Good morning. May it please the Court, Michael McIntosh on behalf of Appellant Eric Grueninger, this appeal presents a classic violation of Edwards v. Arizona. Upon being questioned after his arrest, Eric Grueninger told the arresting officer, these are felonies, I need an attorney, at which point the officer immediately terminated the interview. Three days later, according to the officer's own testimony at trial, the officer went to jail to serve additional warrants on Grueninger, at which point he proceeded to ask Grueninger questions about the case, even though no counsel was present, and in response to those questions, Grueninger gave a confession to the crimes charge. Yet despite having access to all of these facts, Grueninger's trial counsel failed to seek pretrial suppression of the confession, not because of any deliberate strategical calculations, but because of a fundamental misapprehension of the governing law. And the Supreme Court has been clear for over 30 years that ignorance of a point in a law important to a client's case is a quintessential example of deficient performance under Strickland. And here, had counsel moved to suppress the confession, there's a reasonable probability that the outcome of the trial would have been different. The confession served as the Commonwealth's most devastating piece of evidence against Grueninger, and this fact was confirmed by the trial judge's statement on the record that consideration of the confession shifted the entire perspective of the case, according to him, and served as the lens through which he viewed the remainder of the Commonwealth's evidence. The state court's decision to the contrary, that Grueninger's ineffective assistance of counsel claim lacked merit, was objectively unreasonable. For this reason, the court should reverse the judgment of the district court and grant Grueninger habeas relief. Turning first to the deficient performance prong of the Strickland inquiry, both this court and the Supreme Court have been clear that an attorney has a duty to undertake a reasonable investigation of both the facts and law of his client's case. And here, Grueninger's attorney failed at this most basic level. He grounded his decision not to file a motion to suppress based on ignorance of the law of Edwards and his progeny, not any strategic calculation. And in ruling to the contrary, the state court deemed counsel's decision not to seek suppression reasonable and accredited counsel's explanation in his affidavit. But this was mistaken and objectively unreasonable for two reasons. First, nowhere in his affidavit did counsel provide a strategic reason not to seek suppression. He said that seeking suppression would have been baseless, and as an officer of the court, he couldn't file baseless motions. But here again, as I'll get through in a few minutes, this is just repeating his mistaken understanding of the law. And, in fact, this was a plain violation of Edwards. Isn't it also contradicted by what he did at trial? Because he didn't object in the right way, but he did, in fact, object just in the wrong way, right? That's exactly right, Your Honor. And that was my second point, that there's nothing in the record, nothing in the affidavit, to suggest why filing a belated or seeking belated suppression of the confession on the day of trial rather than seven days before is required under Virginia law, somehow comported with his strategic objectives. And so it's plain that the attorney here rendered deficient performance. And moving to the prejudice inquiry, there are two components of prejudice at issue here. The first is whether the claim underlying the motion to suppress is meritorious, and the second would be, assuming the claim is meritorious, whether suppression of the confession would have created a reasonable probability that the outcome would have been different. And here, turning to the first problem, whether the claim underlying the motion to suppress was meritorious, Edwards requires three factors to be met before a confession can be suppressed. First, the suspect needs to have unambiguously requested counsel. Second, the suspect needs to be in custody when he subsequently makes the confession. And third, the confession needs to be made in response to police-initiated interrogation. And here, all three factors were met, and State Court's decision to the contrary was objectively unreasonable. Looking at the first prong of the inquiry, Roeninger unambiguously requested counsel when he told the arresting officer, these are felonies, I need an attorney. The test here is first articulated by the Supreme Court in Davis. Can I just ask you just a quick question to confirm what I think is my sense of the record? Sure. So he's read his Miranda rights, and it's in response to that. Immediately after that, he says, these are serious felonies, I need a lawyer? Yes, that's the implication of the record, that he has read his Miranda rights. The officer may have proceeded to attempt to engage him in conversation, but shortly or immediately after receiving his rights, he said, these are felonies, I need an attorney. And the test in Davis and the Supreme Court opinion is whether the suspect makes a statement that can be reasonably construed as expressing a desire to have the assistance of counsel. Here, that's plainly met. The reasonable construction problem is met because the officer clearly understood this is a request for the assistance of counsel because he immediately terminated the interview upon hearing the statement from Roeninger. And case law bears this out as well. This court and the Supreme Court have found far more equivocal statements, such as, I want an attorney, rather than, as here, I need an attorney, to satisfy this problem of Edwards' formulation. And in Edwards itself, the Supreme Court found that the statement, I want an attorney before making a deal, was sufficient to unequivocally request counsel. As to the second prong, no one disputes that Groeninger was in custody at the time he made the confession. He was being held in uninterrupted pretrial custody pursuant to the March 13 arrest warrant. And then the third prong, Groeninger confessed in response to police-initiated interrogation. And here, the Supreme Court has said that a confession must be suppressed if it was made in response to questioning by police, unless both the suspect initiated those discussions and the suspect knowingly and intelligently waived his previously asserted right to counsel. And here, the officer's own testimony at trial confirms that he went to the jail of his own volition to serve additional warrants on Groeninger and then proceeded to expressly question him about the case, and it was in response to those questions that Groeninger made his confession. Now, the state court in its decision focused exclusively on this third prong of Edwards' formulation in finding that a motion to suppress would not have been meritorious, but this was objectively unreasonable. First, the court said that the officer's mere serving of warrants on Groeninger was insufficient to constitute an interrogation under Edwards. But this asks the wrong question and misstates the legal standard. The question is not whether the serving of warrants on Groeninger constituted interrogation. The question is whether the officer's subsequent expressed questioning about the crimes constituted interrogation. And here, that's been clear since Rhode Island v. Innis, that expressed questioning constitutes interrogation for Miranda and now Edwards' purposes. Second, the state court suggested that because Groeninger voluntarily responded to these questions, that this wasn't an interrogation for Edwards' purposes. But here again, this is a blatant misunderstanding of Supreme Court precedent. As first articulated in Arizona v. Roberson and later in Maryland v. Schatzer, the Supreme Court has said that Edwards creates a presumption of involuntariness, whereas here a suspect is responding to police questioning after previously having asserted his right to counsel. And, you know, put more bluntly, the court in Smith v. Illinois said that whether the confession actually was coerced or otherwise involuntarily obtained simply is irrelevant to the Edwards inquiry. Counsel, can I ask you a question about this part? So I agree with you. I'm looking at the state court's holding, and it does rest entirely on this interrogation point. I do think it's extremely hard to reconcile with the part where the officer testifies yes. And I went and I asked him a bunch of questions about the case, and he answered them, and that's when I got the confession. But the state court said otherwise, so that would have to be clearly unreasonable under AEDPA for us to grant relief. Is it your position that on the other sort of prongs of this claim, AEDPA deference also applies? On the question of whether or not there was an invocation and on the question of whether or not had the confession been suppressed, there's a reasonable probability that the trial would have come out differently? Do we owe AEDPA deference to those hypothetical points which were not, in fact, made by the state court anywhere? Yes, I think you do. I think they are clearly objectively unreasonable. But, I mean, given recent Supreme Court pronouncements in Harrington v. Richter, Cullen v. Pinholster, it's clear that even a summary sentence denying a habeas claim means that deference has to be made. Well, it does if there's nothing behind it. But in that case that I can't pronounce, Y-O-S-T, isn't the rule that if there's just a summary state Supreme Court affirmance, you look through it to the last reasoned opinion of the state court and you assume that that's what the state court was affirming? Right, no, that's correct. Okay, well, then why aren't we just looking at this and giving AEDPA deference to this but not to anything else? Right, and here that is the operative opinion, that's right. So the operative, the deference is afforded here to the state trial court opinion or the circuit court opinion. And the state trial court did not reach these other two grounds. The state trial court didn't say anything about whether there had been an invocation or whether if the confession had been suppressed there was a reasonable probability of a different outcome. So why are we hypothesizing those other two rulings and then affording them deference? Right, that is not something you should do, Your Honor, respectfully. Extend deference only to the police interrogation prong of the inquiry. And then coming to the second component of prejudice. So your view is that we make an independent determination about whether admission of this evidence would have been, there was a reasonable determination that it would result in a different, come to a different result. Is that it? No, I think deference does apply here because the state habeas court said that it found no prejudice so as to the outcome determinative prong. So that general statement of no prejudice pushes in. Yes, yes, I believe so. Really? Even in this context where it says the serving of the warrants, as you say, there was no interrogation here. Thus, counsel correctly determined that the statements would not have been suppressed. The court dismisses this claim for failure to establish deficient performance or prejudice. It seems pretty clear to me that he's saying the only state opinion we have is saying there's no prejudice because it would not have been suppressed. So of course there's no prejudice. Right, right, that's right. This court has not, to my knowledge, answered that question, but there is authority from other circuits where when a state court in a Strickland inquiry expressly mentions, say, deficient performance or one prong of prejudice, it doesn't mention anything else. The court extends deference only to that aspect of the decision. But it did find no prejudice. It did find, that's correct. It found no prejudice but focused only on whether the underlying claim has merit prong of prejudice, not on the outcome determination or reasonable probability prong. So this court should, of course, extend deference to that prong of whether the underlying claim is meritorious, that part of prejudice, but it should conduct de novo review of whether, assuming it disagrees or finds the state court's decision objectively unreasonable, as to that part of prejudice, it should conduct de novo review of whether there's a reasonable probability that had the confession been suppressed, the outcome would have been different. I think under that, under any standard, I think that reasonable probability is met here. You know, as an initial matter, you know, this court and the Supreme Court have time and again explained that a confession is perhaps the most devastating piece of evidence that can be admitted against a defendant. Well, the confession didn't involve anything about child pornography. So I think the – So what happens with respect to that conviction? Well, that's a good question. I think there's reasonable probability that all of the – that Gruninger would have been acquitted of all charges against him. As Your Honor mentions, that argument is especially strong as to the physical abuse charges and to the distribution of child pornography charges, which rested exclusively on the testimony of Gruninger's daughter. And had Gruninger not confessed, there's a reasonable – or had the confession not come into evidence, there's a reasonable probability that the trial judge would have found his daughter's testimony not credible. As to the possession charges in particular, Gruninger, in his confession, admitted that he had primary ownership over the computer on which the child pornography was found. And so that contributed to the fact finder's determination that he had knowing possession of child pornography. So I think the confession also relates to those charges as well. But I think the important thing, even a part – or to go back to the power of confessions, this court in United States v. Ince said that, you know, it's virtually impossible to salvage a fair trial for a defendant once his confession has been erroneously admitted. And I think that concern isn't academic or speculative here. The trial judge, on the record, stated that the entire perspective of the case, according to him, shifted when he accepted the credibility of the confession. He then used that confession as a way to bolster the credibility of the Commonwealth's remaining witnesses. And I think this is critically important as it pertains to the testimony of Gruninger's daughter, who was the other key witness offered by the Commonwealth. And the court framed its analysis of the daughter's credibility by saying, on page 305 of the JA, with the confession as evidence as a basis to go forward, he would then evaluate the credibility of Gruninger's daughter and then deem her credible. So it was clear that his appraisal of the daughter's credibility was inextricably bound up with his previous acceptance of the confession. Well, he also found, not just because of the confession, but because of her demeanor, her age, he found her entirely credible. That's true. That is true, Your Honor. He said that, well, not airtight. Her testimony certainly was credible. But I think that that can't be divorced from his introductory – Well, credibility is the factual finding, right? That's right. So to rebut it, you have to have clear and convincing evidence? No, I don't believe that's the case because the state habeas court never said – I mean, there would have to be clear and convincing evidence to rebut the state habeas court's factual finding. But here, there was no factual finding on habeas review that the daughter's testimony would have been credible absent introduction of Gruninger's confession. So I think here, I don't think it can be – I think it can be rebutted on his earlier finding that Gruninger's confession was credible and that the daughter's testimony was consistent with that confession and then credible. I see that my time is up, so I'd like to reserve my remainder for rebuttal, if there are no questions. Thank you. Thanks. Mr. Whitman? Good morning, Judge Motzen. May it please the Court. Stephen Whitman on behalf of the Director of the Department of Corrections today. To begin at the end, factual findings made by a state court during the initial trial also are subject to AEDPA deference. They must be accepted by this Court unless rebutted by clear and convincing evidence, and there is no clear and convincing evidence in the record to rebut the finding that the victim was credible because the judge had examined her age, demeanor, et cetera, et cetera. If we are talking about credibility of witnesses, this case really is over for purposes of AEDPA. To the extent that Mr. Gruninger is relying upon attacks at this late date on credibility of witnesses, saying that trial counsel's explanation should not be believed when it was believed by the state trial court under AEDPA deference, he must fail. Counsel offered an explanation. Counsel, I mean, really, I'm so puzzled by this. So you think there is some reasonable explanation for finding that the counsel in this case, trial counsel made a strategic judgment. He thought it would just only annoy the trial court to raise a baseless motion in the proper way, seven days before trial and in writing, but strategically what would be a really good idea is to do it improperly on the day of trial orally. And that just strikes me as an objectively unreasonable finding that that was the result of the strategic judgment. Your Honor, Judge Harris, the record reflects exactly why this happened. The record including trial counsel's affidavit. At joint appendix 342, trial counsel says this was not an unequivocal demand for an attorney. And he's correct. Then why does he make the, why does he try to get it? And as he explains later in the affidavit and as the district judge explained in its decision, counsel brings this up to the trial court because the client on the morning of trial was demanding that he bring it to the court's attention. That's why he did it. He did it to mollify the client. That's what's apparent from the record. That's what's reflected in the district court's opinion. So you think that saying that I need a lawyer would be frivolous as to saying that that's invoking your right to be silent? That would be frivolous if you made that motion to suppress after subsequently questioning him? I don't know that it rises to the level of frivolity. However, it also does not rise to the level of clear invocation in all cases depending on the context. Mr. Greninger has made the argument that I need a lawyer is somehow less unequivocal than I want a lawyer, and he's simply got it wrong. To put into one side the relative clarity of the two statements, if someone reads your Miranda rights and says you have a right to a lawyer, and you respond by saying I need a lawyer, I really fail to see the room for misinterpretation there. Your Honor, the courts have been over this over and over, including this court. Statements I need a lawyer are not always going to be an unequivocal invocation of right to counsel. What's the closest case from our circuit saying if someone reads you your Miranda rights and you respond by saying I need a lawyer, that is not an invocation of counsel? I mean, the list is in a brief. We've got Ligwe and Burkett and Smith, all of which involved a statement to the effect that I need a lawyer rather than I want a lawyer. And because the test is whether the defendant has made clear his desire to deal with the police only through an attorney, I need a lawyer is a weaker statement than I want a lawyer, because I want is about the defendant's, the suspect's subjective desire. Here we know it was clear because the way that the officer responded by disengaging the conversation and leaving him alone. So it was very clear to the ear that had to hear it and then interpret it. The interpretation was very clear. He stopped. I would think that your stronger argument would be about prejudice. I do agree. Perhaps you could see the way the wind is blowing. Your prejudice. My sense was that the court was not going to allow me to avoid discussing the merits of the claim on no prejudice. I'm not sure you persuade anybody. Very, very quickly before you leave. All right. So you were conceding that there was an interrogation, right? You're not trying to argue that there was no interrogation here. Absolutely. I would I would concede that what happened was an interrogation. And the question at trial is unequivocal implication. Yes, absolutely. In terms of. No prejudice. Trial court states it would have denied the motion under Kimmelman. The defendant has to show. When he's complaining that the lawyer didn't make a motion. That the motion was reasonably likely to be granted. And that had it been granted. There would have been a reasonable likelihood of a different result at trial. He cannot make that showing. He cannot make that showing because the trial court found it would not have granted the motion. Let's go to the second argument. He can. I mean, maybe you want to. Your Honor, he can. Focus on your frivolous argument. But he can argue that the trial judge might have been wrong, but he can't argue that the ruling hasn't been made. With respect to the separate no prejudice finding of the district court. That's the defendant. Mr. Penninger has offered nothing in rebuttal to that. The evidence in this case is overwhelming. It's overwhelming not because of the confession. It's overwhelming because there was extensive testimony from the daughter. How do you address the contention that my colleague raised? That the only finding of prejudice was that with regard to whether or not. That the only finding that we defer to with respect to prejudice was the rationale given by the state court. Well, it's very clear under Penn-Holster, which is the holding in Penn-Holster is independent of Yost being a mocker. It's very clear that any conceivable basis for reasonableness ends the federal court's inquiry in federal habeas corpus. However, there's a separate question. We have two separate findings. We have the finding of the state court of no prejudice, which would be entitled to AEDPA deference. We have an independent finding of the district court, which Mr. Greninger also needs to demonstrate is incorrect. And that finding is based upon the observation that the evidence is overwhelming. Mr. Greninger's statement. We see that the way we regularly review district court opinions. That's the AEDPA deference. What I'm asking you about is the AEDPA deference or not that we give to the prejudice determination by the state court here. I don't know. I would not agree that it is limited to the statement that was made. I think the court has to review the record as a whole. And for that determination, for that, what's your authority for that? It would be it would be pinholster. Any conceivable basis. But whether the interaction of pinholster and I mean, that's sort of a very difficult question, right? And our circuit hasn't passed on it, whether it survives pinholster so that in a case like this, you still do look through and assume that the summary deferments was based on the rationale offered by the last reasoned opinion. I don't think pinholster overruled yields. If that's if that's the question, I still think we go back and this is all we have where they said the motion wasn't going to be granted. There is no state court finding for us to defer to that. Had the motion been granted, it would have come out the same way anyway. I would agree with and I would agree with that state with that statement. First of all, there is no there is no state court finding on the second part of the Kimmelman test. Great. All right. Does that answer your question? I don't know. So the just knowing at the deference to any finding about prejudice other than what was the rationale that was stated by the state court. That's your submission. No, no. My submission is that there is any if there is any conceivable basis for reasonableness in the state court's decision, this court has to show deference. However, I would concede that the state court, although it found no prejudice, did not make an express finding based upon the overwhelming nature of the evidence. But we still, according to you, have to imply that because it would be a basis on which to affirm the state court. Is that what you're saying? Yes. Yes. How is that consistent with Ilst, which says, right, which says you look through. Now, I can't find a quote, but you look through and the rule that a federal habeas court is to apply is that the affirmance from the state court rests only on the grounds that were actually addressed by the last reasoned opinion and that you don't owe deference to some other thing that the state court didn't say. Your Honor. I mean, I think you are arguing that pinholster overrules. Maybe maybe I am and I don't realize it. And I'm sorry if I'm if I've been unclear, but I think this is really tricky because I do. I do think that pinholster imposes a requirement that that any conceivable basis for reasonableness be respected. Going to the district court's opinion, which I do concede is is under the ordinary appellate standard of review as it comes before this court. There has been no effort to show that it was wrong. The evidence is abundant in this case, and the statement the defendant made to the officer is not the only statement in the record from him. It's very clear that Mr. Greininger made damaging admissions to employees of the Department of Social Services before the criminal prosecution was brought. Those came into evidence. It's clear that Mr. Greininger wrote a number of letters to his wife. I think the grand total was seven that were not prompted by the interrogation by the officer. Did he confess that he raped his daughter? He did not make an express confession of rape. His language was, I would say, there were veiled admissions of having harmed his daughter without an express concession of rape. He harmed his daughter. He was sad that he had yelled at her, and he thought that had a rather damaging impact on her. That's the explanation that he offered at trial. That explanation was rejected by the trial court and under an appellate standard of review. Well, we know why, because the trial court clearly said that the watershed in this case is whether or not his confession is believed, and once that's the case, that's become the watershed. Unlike a jury trial, this is even better. We know what was in the fact finder's head because he told us. He said, once that's resolved, that he confessed, that I believe that confession, then the rest is downhill with her. That's what he said. The trial court independently found that the daughter was credible based upon her demeanor and her testimony. But here's the problem. You're independently credible, and another witness testified and said, everybody's independently credible until otherwise proven otherwise, but the burden is beyond a reasonable doubt. That's what he was saying, that the watershed is their confession, and that's what makes it, takes it over the top. Unless she said something that was just outlandish, he was saying, basically, he loses. Your Honor, I would. How would you interpret it? Your Honor, that understates the remainder of the evidence, including the evidence that corroborated the testimony of the daughter and including the defendant's own specific denials, which were found incredible. Under an appellate standard of review, such denials constitute affirmative evidence of guilt. It's incredible because he confessed. When you get on the stand and say, I didn't do it, it's incredible because you've confessed. That's why. Your Honor, it was incredible because there was no innocent explanation for his bathing with his teenage daughter and shaving her pubic reason. That's why it was incredible. No, wait a minute. You said there's no innocent explanation? There is no innocent explanation for that. Well, which of those is a crime? Which of those is a crime? I would suggest that the shaving clearly is a crime. That's a crime? What's the crime? That's a touching under state law with the intent to arouse or sexually gratify himself. Wait a minute. Did he say he did that because he wants to? And that was disbelieved. Wait a minute. You're going very far. You're saying that because he did that that's against the law? Yes. It is? It is in Virginia. If her mother did it, would it be against the law? If her mother did it, would it be against the law? It depends upon the reason why her mother did it. She did it because she wanted to remove genital hair. If she does it with the intent to sexually arouse or gratify any person, then it's a crime under Virginia law. So you're adding a lascivious standard to that. I thought we were just talking about the act of shaving. There is no innocent explanation for that. There's not? According to you? Is that your standard? Judge Gregory. Or the law. Or the law. The law allows fact finders to rely upon their common experience in evaluating the evidences before them, and the trial court determined that Mr. Greenidge's testimony was false. His testimony itself provides evidence that supports the judgment. For example, if he slept in the same bed with his 11-year-old daughter, then would that be also a crime? Not per se, no. Why not? I mean, your mind might think of all kinds of lascivious reasons for that, right? In other words, you might say, well, I can't think of a reason why a man would sleep in the same bed with his 11-year-old daughter unless he really is lascivious. What's the standard? The point is, once he confessed, the rest of that didn't make any difference. Once they confessed, that's what the court was saying. That is absolutely not true. Okay. Judge Gregory. How do you know it's not true? Because the trial judge independently stated its reasons for believing the daughter. The trial court had ample corroborating evidence, and the trial court expressly found Mr. Greenidge's testimony was false. Well, what about the fact that she had fantasies that included having sex with her father? Judge Gregory. What? The record reflects this child was groomed from a young age for sexual activity by having pornography shown to her, pornography showing adult men having sexual contact with very young female children. That's what's in the record. I don't know what other damage was done to the daughter in this case, but it's very clear that there is an explanation for why a fact finder would disbelieve Mr. Greninger and believe the other evidence in this case that established that Mr. Greninger did possess child pornography. Well, his whole defense was gone, though. That's the point. I agree with you, counsel. You're absolutely right. There are many things that one could find corroborate pornography and all those things. But in this case, once the confession came in, his whole side of the equation was just wiped out, gone. Judge Gregory, his defense was his testimony that I didn't do it. But he lost that because he confessed. It came in. That's what the judge said. Once I determined the credibility of the confession, the case is over for him. That's what he said. In the plainest language one could say it. His whole side of the equation was wiped off. I agree with you. There are things that pornography and all the shaming that people have. I agree. All those are strange, weird. You can't think of a man who would do that. But the point is his whole side was wiped out. It's gone. Judge Gregory, he testified and falsely denied having committed sexual assaults on his daughter. That's under the appellate standard of review. His testimony that he did not rape and sodomize his daughter is false and affirmative evidence of guilt. Right. And it's false because we know that he confessed otherwise. No, it's false under the appellate standard of review. It must be taken as false in the light most favorable to the party who prevailed at trial when the testimony is disbelieved. The question was, was it disbelieved for a reason that violated the Constitution? That's the issue. Was it disbelieved because of a violation of the Constitution, Fourth Amendment rights? The suppression wasn't raised. Here we have a Sixth Amendment right to effective counsel, really, IAC, which goes back to we don't need to talk about. But I can't imagine anybody worth their salt would say that they wouldn't bring a suppression motion in a case like this. Judge Gregory, with all due respect, I understand the court's concern about that. But it's very clear that a reasonable fact finder, upon hearing the evidence in this case, would have concluded that the defendant was guilty of the charged offenses. That confession did not cover all of the offenses. And the trial court, notwithstanding that, found the defendant guilty of all of the other offenses. Well, I agree the confession seems much less important to the child pornography offenses than it does to the physical abuse offenses. But can I ask you a question? This whole sort of second prong of Kimmelman, would the suppression of the confession have made a difference at trial? If instead we're just looking at, if I'm understanding the posture of this case, there's still an independent Edwards claim, which has been procedurally defaulted. But ineffective assistance is cause for a procedural default. So if we were to find, I'm trying to figure out, do we get into this whole second prong of Kimmelman if we're looking at the substantive Edwards claim or not? I think maybe not. The court has to address the second prong of Kimmelman to get through the cause and prejudice analysis in order to reach the substantive claim. That second prong of Kimmelman is still something this court has to deal with. It's something the district court dealt with. And unless the district court's decision on that was erroneous, this court's obligation would be to affirm on that basis. And when we're looking to see whether there's been a strickland error that would satisfy the cause and prejudice kind of excuse for procedural default, do we apply edpa deference to that? Do we have a case from our circuit saying you apply edpa deference in that context? Do you know what I'm saying? Or do we look at the strickland, whether or not there has been a strickland error sufficient to show cause and prejudice more de novo? Within strickland there's a cause and prejudice. To an additional prejudice. I'm not sure I understand the question, Judge Motz and Judge Harris. Well, my understanding is that the circuits are split on this question of whether when you're reviewing the existence of ineffective assistance of counsel for procedural default purposes, whether you defer to a state court resolution of that claim on the merits under edpa, or whether you come to it independently because you're trying to figure out something different here, whether the default of this claim is excused because basically it was the lawyer's fault. My answer would be that there would be edpa deference, but that also this court has to deal with the district judge's finding of no prejudice before it can find... The posture to you is the same answer both ways. That's correct, Your Honor. I do see my time has expired. Yes, thank you. Can I just, I'm just, these are information questions. These are not trying to trick you about anything. There is an Edwards error, but the way that we get to it is to say there's ineffective assistance. That has to be the cause and prejudice. You don't have any other basis. That's correct. But if so, if the court applying edpa deference to the extent appropriate, finds that Gruninger has raised an independent claim of ineffective assistance of counsel, that's the end of the inquiry. Relief is warranted, and the court need not reach cause and prejudice. But if the court finds that applying edpa deference, it's not persuaded that the state court's decision was objectively unreasonable, it still should apply de novo review to the separate question of whether ineffective assistance is cause and prejudice to excuse the procedural default. I'm sure that that could be parsed, but not by me. So I'm not sure I understand. I thought that we had to go through, that this wasn't ineffective assistance of counsel claim as it comes to us. And the ineffective assistance of counsel claim is the failure to pursue the Edwards claim. But the Edwards claim isn't in front of us. That's partially correct. Edwards claim. Edwards claim. The only claim that we can adjudicate is the ineffective assistance claim. I respectfully disagree, Your Honor. Is that not right? I think there are two independent claims here. The first claim is ineffective assistance of counsel. Right. The second claim is an Edwards claim on the merits, notwithstanding ineffective assistance. Now, that second claim is procedurally defaulted and our cause and prejudice. So to show cause and prejudice, you have to show ineffective assistance. That's right. So they both get you to the ineffective assistance, don't they? That's right. There's a different standard of review, though. The circuits are split, but as Judge Harris mentioned, the majority rule is that the court reviews de novo the ineffective assistance claim for purposes of cause and prejudice, whereas as an independent claim, it extends at the deference to the state court's decision. So there is a window there where the court might not be persuaded that the state habeas court's decision was objectively unreasonable, but applying de novo review might find the ineffective assistance claim sufficiently meritorious to reach the Edwards claim on the merits. But we still, in determining that, I understand that it doesn't apply, but we still have the regular old ineffective assistance prejudice prong, and we have all that law on what that does or doesn't require. That's correct. But establishing strickland prejudice in this case necessarily establishes the merits of the Edwards claim, because by establishing prejudice, Gruninger has shown both that the claim is meritorious and that it's not harmless, because the strickland prejudice inquiry requires a greater showing than showing that an error is not harmless under habeas review, under the standard in Brecht. All right. So let me just give you sort of a hypothetical way one might approach these issues. One might think it's obvious there was an Edwards error, and holding that there was no Edwards error in this case is plainly unreasonable. And one might also think, you know, coming to a cold, I would say probably introduction of the confession or suppression of the confession under the second part of Kimmelman. Suppression of the confession, there's a reasonable probability this case would have come out differently, at least as to the physical abuse charges, but it is not clearly unreasonable to say it would have come out the same. If somebody thought those things, it might make a difference, whether you were looking at the strickland claim or the Edwards claim, the substantive Edwards claim, even though you have to show ineffective assistance to get past cause and prejudice, because it would be enough there to say, I think it would have come out, there's a reasonable likelihood it would have come out differently, although I can't say it's plainly unreasonable to see it differently. Yeah, that's exactly right, Your Honor. But with the qualification that here at the deference arguably doesn't extend to the prong that was given, Your Honor, concern in the hypothetical. But we don't really know the answer to that question. And I'd like to discuss that briefly. My position, my reading of – Can you tell me where you briefed that particular argument? No, I can't. Because it's not in your briefing. No, it's not in the briefing. That's correct, Your Honor. Mr. Harris is a fine lawyer. Bring new arguments to the table. Yes, yes. There wasn't enough to think about from the prior three arguments, I'm sure. The Cullen and Harrington v. Richter, I think, just stood for the proposition that a summary denial of a habeas petition qualifies as an adjudication on the merits. But where – I don't think they overruled Ilst. And where, as here we look to the last reasoned decision on the matter, it's clear the Court reached the deficient performance prong in the first prong of Kimmelman whether the underlying claim is meritorious. And so this Court should not extend any deference to the hypothetical resolution of the second prejudice prong, which is whether there's a reasonable probability that the outcome of the case would have been different. And I just want to briefly address one thing. Counsel for the Commonwealth really emphasized Gruninger's testimony and how disbelief of this testimony is affirmative evidence of guilt. We've briefed why that is not enough to – I see that my time is up. Can I finish this brief? The odd thing is that his confession isn't terribly damaging either. I mean, it's just – it's all very – I mean, I'm not saying that there wasn't error, but the actual confession isn't so much of a confession. I think the confession established the necessary element of every charge against Gruninger, and most notably the physical abuse charges. I mean, the fact finder said on the record, as Judge Gregory said, it was all downhill from the finding that the confession was credible. And I just want to make one final point, which is that had the confession been suppressed, there's a reasonable probability that Gruninger wouldn't even have testified. I mean, there wouldn't have been testimony that would have been considered affirmative evidence of guilt to the extent disbelieved by the fact finder. He wouldn't have had the need to counter the confession as testified to by the investigating officer. And in conclusion, we request that the Court reverse the judgment of the District Court and grant Gruninger's opinion. Mr. McIntosh, I note that you are quit appointed? Yes. That's true. We very much appreciate your efforts. Thank you. And I remember also that you clerked on this Court. Yes. We're very proud of your work. Thank you. We'll ask the Clerk to adjourn Court, and then we'll come down and greet the lawyers. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Diana Gribbon Motz, Roger L. Gregory, Pamela A. Harris